## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 2U, INC., and GET EDUCATED INTERNATIONAL PROPRIETARY LTD., <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL CARDONA, Secretary of Education, and U.S. DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 1:23-cv-00925-TNM |

## JOINT STATUS REPORT

In accordance with the Court's instructions at the April 14, 2023 status conference and in the accompanying minute order, the parties have met and conferred to discuss the next steps in this case. Their respective positions are set forth below.

### Plaintiffs' Position

Plaintiffs' core objective with respect to scheduling is to allow the parties and the Court to resolve the underlying disputes in this case based on a single round of briefing, without Plaintiffs being forced to endure the irreparable harms associated with compliance during that period. As explained at length elsewhere, compliance would require Plaintiffs to alter approximately 180 contracts with numerous partner institutions, as well as impose other significant burdens. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Stay and Preliminary Injunction 33-40, ECF No. 9-1 (Stay Mem.). The Department of Education has itself

acknowledged that parties will need at least six months to comply with the updated DCL. *See* U.S. Dep't of Educ., *Update on the Department of Education's Third-Party Servicer Guidance* (Apr. 11, 2023), https://blog.ed.gov/2023/04/update-on-the-department-of-educations-third-party-servicer-guidance/ (Blog Post). In Plaintiffs' view, the most reasonable approach is that the six months for compliance that everyone acknowledges is necessary should not begin to run until the Court decides the legality of the forthcoming upcoming 2023 Dear Colleague Letter (DCL), as the Court's decision may obviate or modify any applicable compliance obligations.

At the status conference on April 14, 2023, the Court indicated its preference to streamline the case and avoid duplicative briefing. In keeping with that preference, Plaintiffs proposed the following to the Department as a potential way forward that would obviate the need for emergency proceedings:

- Plaintiffs withdraw their pending motion for a stay or preliminary injunction;

- The parties agree to stay this case until an updated DCL is issued;

- The parties agree to an expedited schedule for merits briefing once an updated DCL is issued, to allow for provision of the administrative record and full briefing and decision within four months; and

- The Department agrees that its updated DCL will require compliance no sooner than 10 months after issuance (to allow four months for briefing and decision on the merits, and six months for compliance if necessary).

The Department rejected this approach and refused to commit to extending the six-month deadline for complying with the updated DCL. Instead, the Department is proposing that proceedings in the case be stayed entirely until after the updated DCL is issued, at which point it will discuss an

appropriate briefing schedule.  *See infra* at 8-9.  In other words, the Department is not willing to make any meaningful accommodation.

The most significant problem with the Department's approach is that the six-month compliance deadline forecasted in the April 11 Blog Post would require Plaintiffs (and numerous other parties, including virtually all universities) to begin the burdensome steps necessary to comply with the updated DCL virtually immediately upon its issuance.  Indeed, the Department itself states that "Plaintiff 2U can initiate the process of renegotiating its affected contracts (if the revised guidance makes renegotiation necessary) *during the briefing*, so it would have the full six months it claims to need for renegotiation before any new guidance goes into effect."  *Infra* at 9 (emphasis added).  The Department offers no explanation for why it would be fair or appropriate to force 2U to make binding and potentially irreversible changes to its contracts before obtaining this Court's adjudication on the merits.  The Department ignores that the threat of such irreparable harm will force Plaintiffs to seek emergency relief upon issuance of an updated DCL.[1]  The Department's unwillingness to provide more than six months to comply makes emergency proceedings inevitable.

In light of the Department's position, Plaintiffs respectfully propose that the following approach would be the most efficient course for structuring those proceedings so that the Court can resolve the merits of the updated DCL using only a single round of briefing:

---

[1] The Department cites the Higher Education Act (HEA) master calendar requirement to justify its six-month deadline.  *Infra* at 9.  But the master calendar provision requires the Department to give regulated entities at least *eight* months to comply with new regulatory initiatives.  *See* 20 U.S.C. § 1089(c) (providing that regulatory changes affecting programs under Title IV of the HEA that are published in final form on or before November 1 do not go into effect until July 1 of the following year).  The provision thus confirms Plaintiffs' point that six months is insufficient time for compliance.

- Plaintiffs shall withdraw their pending motion for a stay or preliminary injunction.

- All further proceedings in the case shall be stayed until the Department's issuance of an updated DCL, except that the Department shall provide Plaintiffs with the existing administrative record for the original DCL by June 1, 2023.

- Within three days of issuing the updated DCL, the Department shall provide any supplemental administrative record associated with any updates to the DCL.

- Within ten days after receiving the complete administrative record, Plaintiffs shall file an amended complaint (if necessary) and a Motion for a Stay/Preliminary Injunction under Rule 65(1)(2), or, In the Alternative, for Expedited Summary Judgment.  *See* Fed. R. Civ. P. 65(1)(2) (allowing the court to consolidate the preliminary injunction proceedings with "the merits").

- Within seven days after the filing of Plaintiffs' Motion, the Department shall file a response to the amended complaint (if filed) and an Opposition to Plaintiffs' Motion.  *See* Local R. 65.1(c) (establishing seven-day response deadline for motion for preliminary injunction).

- Within seven days after the filing of Defendants' Opposition, Plaintiffs shall file their Reply on their Motion.

- Within seven days after the filing of Plaintiffs' Reply on their Motion, the Court will endeavor to hold a hearing on the Motion.  *See* Local Rule 65.1(d) (providing mechanism for a hearing to be set "within 21 days" after the filing of a preliminary injunction motion).

Plaintiffs recognize that this approach will require great expedition by the parties and the Court once the updated DCL is issued.  But given the Department's unwillingness to extend the

six-month compliance deadline, Plaintiffs see no viable alternative way forward that would avoid the need for two rounds of briefing without imposing significant irreparable harm on Plaintiffs.[2]

Plaintiffs believe that ordering the Department to produce the administrative record as to the original DCL in the coming weeks—before the updated DCL is issued—is an important part of this proposal.  Doing so will ensure that Plaintiffs have sufficient time to review that portion of the record before the updated DCL is issued, thereby facilitating the expedited schedule proposed above.  Such production will not prejudice the Department, because the administrative record as to the original DCL will necessarily be part of the full administrative record as to any updated DCL.[3]  And the short production schedule for producing any supplement to the administrative record as a result of the updated DCL should not prejudice the Department either, because the Department can either (1) prepare that record in the course of its decision-making process, or (2)

---

[2] Although the Department seeks to postpone entry of a schedule for the expedited proceedings, its back-up proposal makes clear that it will eventually request at least three weeks to file the administrative record, and then two weeks to respond to any motion by Plaintiffs.  *Infra* at 11.  Because of the time needed for Plaintiffs to review the administrative record and file their motion and reply, and for the Court to schedule a hearing and issue a decision, it is unlikely that a final merits decision would be issued until at least 2-3 months after the updated DCL is released.  This would leave Plaintiffs with far too little time to comply following a decision, and would thereby require them to seek a stay or preliminary injunctive relief on the expedited schedule envisioned by Local Rule 65.1, even *before* receiving the administrative record and moving for summary judgment.

[3] The Department asserts that it does not intend to produce the administrative record underlying aspects of the original DCL that are deleted from the updated DCL.  *Infra* at 10.  That would violate its duty to produce the full administrative record.  Plaintiffs have challenged the February 2023 DCL, and unless that challenge is withdrawn or dismissed, the Department is obligated to provide the full administrative record as to that version of the DCL.  In any event, the materials underlying the February 2023 DCL are also inevitably part of the record giving rise to the updated DCL, including as to items deleted from the updated DCL.  *See generally Dist. Hosp. Partners v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013); *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006).

delay issuance of the updated DCL for the three weeks the Department says it needs to compile that administrative record, *see infra* at 11.

The Department's resistance to entering an expedited schedule also appears to rest on its view that the existing DCL will never go into effect, that the contents of the updated DCL are entirely speculative, and that the parties cannot know what (if anything) Plaintiffs will need to challenge. *Infra* at 8, 10. None of those rationales holds water. For one thing, the Department has not rescinded the February 2023 DCL, but rather has only suspended its effective date. Moreover, its senior leadership has made absolutely clear that the February 2023 DCL reflects its view that online program managers that perform recruiting services—including 2U—should be classified as third-party servicers under the HEA. Indeed, on April 14—the same day as the status conference, and three days after the blog post—James Kvaal, the Under Secretary of Education and author of the blog post, continued to invoke the February 2023 DCL, treat it as reflecting the Department's ongoing position, and tout its purported benefits to Congress. *See* Pls.' Ex. 1, Letter from James Kvaal to Robert C. "Bobby" Scott, Ranking Member of the House Committee on Education and the Workforce (Apr. 14, 2023), at 2.

Under Secretary Kvaal's letter did not mention the Blog Post or any rescission of the February 2023 DCL. On the contrary, the letter trumpeted that DCL as "clarif[ying] when a company or other third party that provides recruitment services for colleges will be considered a [third-party servicer]," and noted that "*OPMs [online program managers] that provide recruitment services . . . will fall into this category*." *Id.* (emphasis added). Under Secretary

Kvaal's letter shows that the Department has no intention of abandoning the erroneous interpretation of third-party servicer embodied in the February 2023 DCL.[4]

In short, it is hard to imagine a world in which Plaintiffs do not need to seek expedited review of its challenge to the Department's unlawful effort to rewrite the HEA's definition of third-party servicer. The only real question is whether that expedited review should be done in *one* round of briefing and decision (as Plaintiffs request) or *two* rounds (as the Department's proposal will inevitably require). Plaintiffs respectfully submit that a single round of briefing is superior, and ask the Court to adopt the proposal set forth above.

**Defendants' Position**

The parties are in agreement that that this litigation should be stayed and that Plaintiffs will withdraw their pending motion for stay or preliminary injunction. Plaintiffs' proposal to the Court, *supra* at 4, also aligns with Defendants' position that six months will provide sufficient time for the parties to get a decision from the Court on the merits of any future challenge to a revised final

---

[4] Under Secretary Kvaal's letter confirms that the Department has not rescinded the February 2023 DCL and that Plaintiffs' challenge to that DCL is not moot. But even if the Department had fully rescinded the DCL, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Under this mootness exception, a case is moot only if "the party urging mootness demonstrates that (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely or irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 249 (D.C. Cir. 1997). Here, the Department cannot show that "there is *no reasonable expectation* that the alleged violation will recur." *Id.* (emphasis added). Indeed, Under Secretary Kvaal's letter makes clear that the revised guidance will continue to target OPMs like 2U and will continue to rest on the same legal basis as the original. *See* Pls.' Ex. 1 at 2. And the Blog Post itself indicates that the Department plans to issue its updated DCL in a manner that violates the procedural requirements of the HEA and Administrative Procedure Act. *See* Stay Mem. at 30-32. Plaintiffs' case is therefore not moot. *See, e.g.*, *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 414 (D.C. Cir. 2011) (rejecting mootness argument despite agency's temporary exemption and assertion of forthcoming changes to guidance letter); *see also West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022).

guidance, as long as briefing is expedited, or at the very least a decision on a future preliminary-injunction motion, and for compliance with any revised final guidance. To decide anything further at this stage would be premature.

As Defendants explained at the April 14 status conference, and as the Department of Education's April 11 announcement made clear, the challenged guidance, DCL GEN-23-03, is not in effect and will never go into effect in its current form.[5] Final revised guidance does not exist yet—even within the Department. The Department has just begun a monthslong process of carefully reviewing the more than 1,000 comments it received from the community and developing new guidance. Not knowing what that guidance will say before having undergone that process, Defendants—like Plaintiffs—can only speculate as to what the administrative record for any final revised guidance will consist of and what, if anything, Plaintiffs will challenge with respect to that guidance. Under Secretary Kvaal's April 14 letter is not to the contrary. While it discussed DCL GEN-23-03 in one concluding paragraph and failed to incorporate the Department's announcement made three days prior, nothing in it is inconsistent with that announcement, nor does it foreshadow what the Department's revised guidance will say. For these reasons, it would be premature to set a briefing schedule on Plaintiffs' hypothetical amended complaint and accompanying motion challenging a revised guidance that does not yet exist.

Instead, Defendants propose to meet and confer with Plaintiffs immediately after issuing any final revised guidance and, if Plaintiffs wish to file an amended complaint challenging the revised guidance, to negotiate a single, expedited summary-judgment briefing schedule at that

---

[5] Plaintiffs' argument in footnote 4 above that their challenge to DCL GEN-23-03 is not moot is irrelevant, now that the parties agree that the litigation should be stayed pending the issuance of revised final guidance. Defendants therefore do not respond to that argument here but reserve their right to do so in the future should it become relevant.

time. That negotiation would include determining a date for production of the administrative record for the revised guidance. Importantly, in the course of this litigation, Defendants agreed that any revised final guidance will not go into effect for six months after its publication. The parties should be able to brief any challenge on an expedited basis and obtain a decision with time left over for compliance. Indeed, the effective date for the Department's most complicated regulations, many of which are challenged in court, is typically eight months after they are published. *See* 20 U.S.C. § 1089(c) (master calendar provision of the Higher Education Act (HEA), which provides that regulatory changes affecting programs under Title IV of the HEA that are published in final form on or before November 1 do not go into effect until July 1 of the following year). And Plaintiff 2U can initiate the process of renegotiating its affected contracts (if the revised guidance makes renegotiation necessary) during the briefing, so it would have the full six months it claims to need for renegotiation before any new guidance goes into effect.[6]

It makes no sense to require the Department to produce an administrative record for a DCL that will never go into effect, let alone by June 1, 2023, or to set a deadline now for the production of an administrative record for revised guidance that has not yet been developed or issued, and in response to claims that have not yet been brought. As to the DCL GEN-23-03 record, Plaintiffs offer no reason for requiring production—much less expedited production[7]—of a record for a

---

[6] Merely initiating a negotiation process during the briefing, if it became necessary, would fall far short of "irreparable harm." *See, e.g.*, *Cal. Ass'n of Priv. Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018) (to show irreparable harm based on economic injury, a party seeking to preliminarily "enjoin the implementation of a new regulatory burden" must assert economic harm that is "significant, even where it is irretrievable because a defendant has sovereign immunity" (internal quotation marks omitted)).

[7] Plaintiffs ask the Court to require production of the first record by June 1, 2023. *Supra* at 4. Under the local rules, in an Administrative Procedure Act case, the defendant agency generally has 60 days after service to answer the complaint, and an administrative record is generally due 30 days thereafter. *See* LCvR 7(n); Fed. R. Civ. P. 12(a)(2). Plaintiffs served the complaint on April

policy guidance that *will not be litigated*. They state that it "will necessarily be part of" the record underlying the revised guidance, *supra* at 5, but that statement is not only speculative but almost certainly incorrect. For example, the Department has specified at least one aspect of DCL GEN-23-03 that will not be included in the revised guidance—namely, the foreign-ownership aspect. As a result, what the Department considered with respect to the foreign ownership issue is no longer relevant. Even if the entire DCL GEN-23-03 record were properly part of the future guidance's record, there is no basis for requiring production of what would be essentially a partial record before the relevant guidance is even issued, much less before an amended complaint is filed.

Expedited production of two administrative records would prejudice Defendants for the simple reason that the Department does not have unlimited resources. *Contra supra* at 5–6. The Department officials who are involved in the development of the revised final guidance are the same individuals who would be responsible for putting together the administrative record for both DCL GEN-23-03 and the revised final guidance. Even if it were appropriate to produce an administrative record before service of an amended complaint, and even if an administrative record were relevant to briefing Plaintiffs' proposed *preliminary-injunction* motion, for obvious reasons the record cannot be finalized (much less produced) before the relevant policy document is issued. *Contra supra* at 5–6. Defendants remain willing to negotiate an expedited briefing schedule on any future merits briefing, including the production of the administrative record, when any final revised guidance is published and Plaintiffs challenge it.

It would be premature to set a briefing schedule on the merits of a speculative motion on a hypothetical amended complaint challenging an as-yet unknown policy guidance. Plaintiffs'

---

6, 2023, so under the ordinary rules the administrative record underlying DCL GEN-23-03 would not be due until July 5, 2023 (or at the time of filing a dispositive motion on the merits).

proposal demonstrates that, if a briefing schedule becomes necessary, six months will provide ample time, particularly where the Court has assured the parties that it is prepared to issue a decision quickly. If the Court nonetheless chooses to set an expedited briefing schedule now, before the relevant guidance is issued, Defendants respectfully request at least three weeks after the revised guidance is issued to produce the administrative record and at least two weeks to respond to any motion for preliminary injunction or motion for summary judgment.

Dated: April 21, 2023

Respectfully submitted,

/s/ *Roman Martinez*
Roman Martinez (DC Bar No. 1001100)
Andrew D. Prins (DC Bar No. 998490)
Charles S. Dameron (DC Bar No. 1048053)
William J. Seidleck (DC Bar No. 1602107)

LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: roman.martinez@lw.com

*Counsel for Plaintiffs*

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ *Christine L. Coogle*
Christine L. Coogle (D.C. Bar No. 1738913)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
202-880-0282
christine.l.coogle@usdoj.gov

*Counsel for Defendants*