```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3      * * * * * * * * * * * * * * *   )
        2U, INC., et al.,               )      Civil Action
 4                                      )      No. 23-00925
                     Plaintiffs,        )
 5                                      )
          vs.                           )
 6                                      )
        MIGUEL CARDONA, Secretary of    )      Washington, D.C.
 7      Education, et al.,              )      April 14, 2023
                                        )      2:10 p.m.
 8                   Defendants.        )
                                        )
 9      * * * * * * * * * * * * * * *   )

10

11           TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
              BEFORE THE HONORABLE TREVOR N. McFADDEN
12                  UNITED STATES DISTRICT JUDGE

13

14      APPEARANCES:

15      FOR THE PLAINTIFFS:      ROMAN MARTINEZ, ESQ.
                                 ANDREW D. PRINS, ESQ.
16                               WILLIAM J. SEIDLECK, ESQ.
                                 ALEX SIEMERS, ESQ.
17                               LATHAM & WATKINS, LLP
                                 555 Eleventh Street, Northwest
18                               Suite 1000
                                 Washington, D.C. 20004
19

20      FOR THE DEFENDANT:       CHRISTINE L. COOGLE, ESQ.
                                 MARCY BERMAN, ESQ.
21                               U.S. DEPARTMENT OF JUSTICE
                                 FEDERAL PROGRAMS BRANCH, CIVIL
22                                 DIVISION
                                 1100 L Street, Northwest
23                               Washington, D.C. 20005

24

25
```

```
 1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                                Official Court Reporter
 2                              United States District Court for the
                                  District of Columbia
 3                              333 Constitution Avenue, Northwest
                                Room 6706
 4                              Washington, D.C. 20001
                                (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            THE COURTROOM DEPUTY:  This is Civil Action

2      23-925, 2U, Inc., et al., versus Cardona, et al.

3            Counsel, please introduce yourselves for the

4      record, starting with the Plaintiff.

5            MR. MARTINEZ:  Good afternoon, your Honor.  This

6      is Roman Martinez from Latham & Watkins representing the

7      Plaintiffs in this case.  And I'm joined here by my

8      colleagues, Andrew Prins, William Seidleck and Alex Siemers.

9            Mr. Siemers has a pending *pro hac vice* motion, but

10     the other attorneys have filed appearances.

11           THE COURT:  Good afternoon, gentlemen.

12           MS. COOGLE:  Good afternoon, your Honor.  This is

13     Christine Coogle from the U.S. Department of Justice on

14     behalf of Defendants.  And I'm joined here by my colleague,

15     Marcy Berman.

16           MS. BERMAN:  Good afternoon, your Honor.

17           THE COURT:  Good afternoon, ladies.

18           We're here for a status conference.  The

19     Plaintiffs have filed a motion for preliminary injunction.

20     I understand from the parties' filing from earlier this

21     week, though, that the letter -- the "Dear Colleague" letter

22     is, I guess, paused, for lack of a better term.

23           So I'm just trying to find the best way for us to

24     proceed further.

25           Mr. Martinez, I wonder a little bit if there's

1    even a live controversy at this point and, if there is,

2    whether it makes sense for us to hold this in abeyance until

3    we actually know what the final "Dear Colleague" letter

4    might be.

5            Also, maybe as an alternative, it occurs to me

6    that maybe we can just do -- well, as to summary judgment, I

7    was going to say expedited briefing, although I'm not sure

8    that that's even necessary at this point to do expedited

9    briefing.  But we really need to go through the preliminary

10   injunction step.

11           So, Mr. Martinez, I'd be interested in hearing

12   your thoughts on the best way to handle this case given

13   where we are with the "Dear Colleague" letter.

14           MR. MARTINEZ:  Thank you, your Honor.

15           And let me just sort of set forth what we think is

16   the right way to move forward.

17           We sought the stay and the preliminary injunction

18   both because we thought that the department's conduct with

19   the "Dear Colleague" letter was unlawful but also because it

20   was imposing immediately burdens on us with respect to the

21   compliance date, which they had announced as September 1st.

22           The blog post, we think what it potentially does

23   is suspend the September 1st compliance date, but it doesn't

24   change anything more fundamental than that in the sense that

25   the "Dear Colleague" letter remains in effect.  The blog

1    post says that one of the purposes of suspending the

2    effective date is to give additional time for compliance, I

3    think recognizing that the time it was originally -- as it

4    was allotted until September 1st wasn't going to be enough.

5              I think with respect to our pending stay and

6    preliminary injunction motion, we would very happily

7    withdraw that, your Honor, if we could arrange for some sort

8    of briefing schedule, whether we call it expedited or not.

9              I think the key thing would be to have a briefing

10   schedule that would be reasonable for everyone and that

11   would allow for an earlier way to resolve the underlying

12   merits dispute in this case, which is about the substantive

13   problems with the department's new definition of third-party

14   servicer and also the procedural problems having gone

15   through this DCL.  It would allow the Court to resolve that

16   issue ultimately finally on the merits before we have to

17   comply.

18             And I think that in terms of going forward, we

19   think that the briefing schedule makes more sense than

20   holding the case in abeyance because, as we see this

21   unfolding, we think what's almost certain to happen, based

22   on what we know from the department, what they've told us in

23   their public comments, is that the department is at some

24   point unidentified over the coming months, maybe weeks, who

25   knows, is going to issue a revision to the "Dear Colleague"

1    letter that will essentially tweak it at the margins and

2    make various exemptions.  I don't know whether these will be

3    justified or not justified, even on the department's own

4    terms.

5           But we don't see the department fundamentally

6    changing either its core expansion of the definition of

7    third-party servicer and we don't see the department

8    changing the procedural problems with respect to moving

9    forward with this kind of regulatory action using a "Dear

10   Colleague" letter as opposed to negotiated rulemaking,

11   notice and comment rulemaking under the APA or rulemaking

12   that's in compliance with the master calendar requirements.

13          So we think that because of that, it makes sense

14   to have a briefing schedule that would allow us to move

15   forward in the case even as the department is considering

16   its changes to the "Dear Colleague" letter because we just

17   think that those fundamental issues are going to remain.

18          And if we don't do that, the concern we have is

19   that the department's going to pop up at some unidentified

20   point in time weeks or months from now with revisions at the

21   margins to the "Dear Colleague" letter, at which point,

22   because they told us that the parties are going to have only

23   six months to comply, we would then have to refile the stay

24   motion on a fire drill kind of basis and come to you and ask

25   you on an expedited basis to resolve a new stay motion

1    because of course six months -- even if it were enough time

2    for regulated entities to comply, which we don't think it

3    is, but even if it were, it certainly would not be enough

4    time for you and for the parties to come to you with

5    briefing on the merits of the dispute.  So we would still

6    need that stay.

7           So instead of sort of doing nothing for months and

8    then coming to you on a fire drill basis with a new stay

9    motion, we think it makes more sense to litigate our

10   challenge to the DCL which remains in effect and have a

11   reasonable briefing schedule that would allow us to sort of

12   withdraw the stay motion and resolve at summary judgment and

13   cross-motions for summary judgments to resolve the ultimate

14   dispute in this case, you know, which we do think is going

15   to remain.

16          I'm happy to say more about, you know, whether

17   there's a live dispute technically either under the

18   mootness, those standing issues, if you'd like.  But I'll

19   pause there and see if you have questions on that or if

20   there's anything more I can tell you about that.

21          THE COURT:  Mr. Martinez, I am a little concerned

22   that we're going to get halfway into briefing or all the way

23   through or something and suddenly the revisions drop.  And I

24   understand your anticipation that there are going to be

25   revisions at the margins, but I think the government might

1    disagree with that description.

2            But it feels like we're setting ourselves up for

3    you all to do briefing and, Heaven forbid, me to draft an

4    opinion on a version of a letter that is almost certainly

5    going to be superseded.

6            MR. MARTINEZ:  Your Honor, I guess a couple things

7    on that.

8            I'm curious to see what Mrs. Coogle would say.

9    But everything that we've understood from the government --

10   and we've been in touch with them and we've been trying to,

11   you know -- and I commend Ms. Coogle.  She's been very

12   collaborative and has been having collegial discussions with

13   us over the past couple weeks.

14           Even though we have might disagreement on some

15   things, we really do think the fundamental issue here is

16   going to remain on the substance.  And we know for certain

17   that the fundamental issue is going to remain on the process

18   with respect to the procedural issues.

19           I think that with respect to, you know, kind of

20   the mootness-type question, I think the doctrine here, even

21   if it doesn't strictly apply because the "Dear Colleague"

22   letter has not in fact been rescinded, I think there is some

23   element in the mootness case that sort of bears on this

24   situation.

25           If the department had voluntarily fully rescinded

1      the "Dear Colleague" letter and said that they were going to

2      move forward, the case would still not be moot because it

3      would be a voluntary cessation of the unlawful conduct

4      unaccompanied by a concession that the "Dear Colleague"

5      letter was improperly issued.  So we don't think there's a

6      mootness problem.

7              And I think what courts have said in situations

8      where someone has challenged the agency action and then the

9      government has brought up procedural reasons, ripeness,

10     mootness concerns on the, "Hey, we're going to make some

11     changes to this, probably," what courts have recognized --

12     and I'm happy to cite cases if it's helpful, your Honor --

13     is that just because the agency is sort of reconsidering a

14     decision or considering revisions to a regulatory action it

15     has taken, that that doesn't eliminate the justiciability

16     and the value of deciding the validity of the initial

17     underlying action, which is that action is still in effect

18     as the "Dear Colleague" letter is.

19             THE COURT:  Mr. Martinez, this letter was supposed

20     to go in effect in September.  Right?

21             MR. MARTINEZ:  Yes.

22             THE COURT:  September 1st, which is definitely

23     less than six months from now.

24             So if you were going to -- the government has said

25     they're not going to require compliance any earlier than six

1    months from when the new letter drops.  How are we in any

2    different position just to wait until we see what the letter

3    is going to actually say and handle it on an expedited

4    preliminary injunction basis then?  My docket is in pretty

5    good shape.  I think I can move pretty quickly.  I know

6    Latham & Watkins can move quickly.

7         It doesn't strike me this is a technical situation

8    or the type of situation where there's going to be a lot of

9    discovery or anything of that sort and only tweaking at the

10   margins.  My guess is you all can write your opening brief

11   now and tweak your opening brief at the margins when the new

12   letter hits.

13        Why isn't that a better way to handle this?

14        MR. MARTINEZ:  Your Honor, I appreciate your

15   comments.  And I think that, you know, that's not a crazy

16   way to deal with it.  I think there's sort of a couple

17   issues.

18        Number one is that it wouldn't be sort of -- we'd

19   be sort of similarly situated to where we are now.  But

20   where we are now is we've had to file a stay and PI motion.

21   It can't be the final adjudication of the case because we

22   don't have the administrative record.  And so I think if you

23   waited, what we inevitably would have to do is do a quick

24   fire drill resolution of the stay and preliminary injunction

25   and then we would have to later have -- once the government

1    produces the administrative record, have to have final

2    proceedings on -- that would lead to a final adjudication.

3            You're right that there's not discovery in the

4    sense of sort of traditional civil discovery, but there is

5    an administrative issue record here.  And maybe Ms. Coogle

6    can tell us a little bit more about how long that would

7    take.

8            But frankly, we've been talking to the government

9    for weeks now about how long it would take to generate the

10   administrative record in part because we wanted to

11   streamline this; and I think in principle -- I don't want to

12   speak for the government, but I think in principle they

13   might be willing to streamline it and collapse PI with

14   ultimate summary judgment briefing.

15           The hang-up has been if they can't produce an AR

16   for months or weeks, which is what we've been told so far,

17   is that it's -- essentially, we're going to be sitting

18   around and then we're going to have the same situation.

19   When they do issue the DCL, they're still not going to have

20   the AR and we're going to go to two rounds of briefing, one

21   on an expedited PI and then, you know, another one on the

22   merits.

23           And that seems to be maybe not an ideal use of the

24   Court's resources and of the parties' resources.

25           THE COURT:  I agree.  I'm not thrilled about that

1    idea.

2         I guess I wasn't thinking that this was going to

3    turn so much on an administrative record, but I'm quite

4    probably wrong about that.

5         If I am wrong about that, aren't we still just

6    putting ourselves back in the same box where we're going to

7    be briefing on admittedly an incomplete administrative

8    record as to the final letter?

9         MR. MARTINEZ:  Yeah.  I mean, I wish I knew, your

10   Honor.  We've been trying to understand more about what the

11   administration record is likely to entail.  And Ms. Coogle

12   can tell us more.

13        My impression, though, is because of what we've

14   learned from the government that this is not going to be an

15   easy administrative record to pull together; and it's not

16   ready.  And we don't know how long that will take, but my

17   suspicion is that it might in fact be lengthy.  If that's

18   true, it's just going to make things more complicated down

19   the road.

20        We of course don't know what's in it.  We are --

21   you know, we think what was done here, you know, was

22   incorrect; and we wouldn't be surprised if there's helpful

23   material in that administrative record that when we look at

24   it, it might bolster our arguments.  But obviously we would

25   need to see that.

1      I suppose one possible approach, your Honor,

2   although we do think that moving forward that to brief the

3   existing DCL would as a practical matter be the best option

4   here, both because it avoids the fire drill later and

5   because of your Court's decision on these fundamental

6   substantive and procedural questions about what the entire

7   case means and what the procedural requirements are, I think

8   that actually informed and enhanced the department's

9   rulemaking, both with respect to the DCL itself and, you

10   know, with respect to the negotiated rulemaking that's going

11   to happen.

12      You know, if you thought that you didn't want to

13   resolve all that now, my suggestion would be that maybe

14   there's a way to make the next round, you know, of PI

15   briefing or merits briefing easier, you know, by having the

16   government produce the administrative record now and perhaps

17   commit to a briefing schedule when the stay -- you know,

18   when their new action hits so that we can -- you know, we

19   can sort of have an orderly way of resolving it.

20      And we can all agree, both parties and the Court,

21   on how this is going to happen when it ultimately drops,

22   because I think what we'd like to try to avoid is just

23   spinning ourselves up and you and the government with

24   another -- you know, a lot of phone conversations between us

25   and the government, a lot of work on our side, although the

1    government, you know, was looking at a short-term deadline

2    that was probably less than ideal from their perspective.

3    And our thought was just, why do all that next time if we

4    can sort of solve the fundamental issues, you know, up front

5    without all the rush?

6              THE COURT:  All right.  Ms. Coogle, I'd be

7    interested in your views on the best way to handle this.

8              MS. COOGLE:  Thank you, your Honor.

9              I do want to clarify one thing.  I think there

10   might be a little bit of confusion on this.  But the "Dear

11   Colleague" letter that Plaintiffs are challenging here is

12   not in effect.  Mr. Martinez said it is still in effect.  I

13   do want to clarify:  It is not in effect.  It is not going

14   to go into effect in its current form.

15             The department --

16             THE COURT:  Sorry, ma'am.  But does your website

17   tell people that that is to allow providers to have more

18   time to prepare for it?

19             MS. COOGLE:  That is the reasoning provided for

20   stating that it would be at least six months after the

21   issuance of a revised final guidance before the revised

22   final guidance would go into effect, to allow more time,

23   but -- you know, between the issuance of the guidance that

24   will actually go into effect and its effective date.

25             So the department has committed to at least six

1    months for that.  But it has started going through a process

2    of reviewing the more than 1,000 comments it received and,

3    you know, preparing the revised final guidance which, you

4    know, I don't know what that will look like, you know.  I

5    think Plaintiff has an idea of what they think.  But at this

6    stage, it is wholly speculative whether it's going to be

7    tweaks or more fundamental changes.

8            I would also note that the department has already

9    signaled, actually, that it will undergo significant changes

10   between, you know, the "Dear Colleague" letter that's been

11   challenged and the version that will go into effect.  For

12   example, it's already decided to remove the foreign

13   ownership aspects of the guidance, you know, which bears

14   directly on this litigation.

15           So what Plaintiffs are challenging here is not

16   something that's ever going to go into effect in its current

17   version.  So it would not be judicial economy to brief a

18   letter on the merits that is never going to go into effect.

19   So --

20           THE COURT:  Ms. Coogle, is your view that there's

21   a standing problem or mootness or ripeness or something with

22   proceeding now?  Or is your perspective that as a prudential

23   matter it doesn't make sense for us to brief something when

24   we know there's going to be a second version of it before

25   it's enforceable?

1          MS. COOGLE:  I would think both, your Honor.  You

2     know, we would -- our position now is that we do think it

3     would make sense to stay the case, you know, pending the

4     publication of the revised final guidance.  Again, we don't

5     know what the revised final guidance is going to say, but we

6     recognize there will be something that, you know, Plaintiffs

7     will want to -- they'll challenge, may want to challenge

8     something.  It's early to say.

9          We think it would be most efficient to stay this

10    case in the meantime to see what the final guidance actually

11    says months from now.

12         If the Court did wish to proceed on the present

13    complaint, we would ask for the usual 60 days to respond to

14    the complaint in the normal course, recognizing that there

15    is no urgency here at this time; and at that time we

16    wouldn't move to dismiss the compliant as not justiciable

17    because, since the guidance is not going to go into effect

18    in its current form, addressing the merits of that would be

19    an advisory opinion in our view.

20         THE COURT:  Tell me what you're expecting on the

21    administrative record.  How quickly are you going to be able

22    to pull that together?

23         MS. COOGLE:  So for the administrative record, I

24    would note initially that the administrative record for this

25    guidance is not going to be exactly the same as the

1     administrative record for future guidance.

2             But as Mr. Martinez alluded to, it will be a large

3     record here.  As the letter itself states, the department

4     considers many program reviews when preparing the guidance.

5     And, you know, putting those together will include a bit of

6     a process.

7             But the department has already initiated that

8     process; and so I expect that, you know, when it issues its

9     revised final guidance, perhaps the AR at that time will be

10    much more expeditious than it would be, you know, today if

11    we had a letter going into effect.

12            THE COURT:  And what do you think about proceeding

13    to -- when this new letter comes out, are we going to be

14    able to do some sort of expedited briefing on the merits at

15    that point or is that going to -- is that an unrealistic

16    timeframe that Mr. Martinez's clients are going to be under

17    to get spun off to be in compliance with the letter?

18            MS. COOGLE:  From our point of view, it would

19    certainly be realistic; and we would be, you know -- we're

20    open, you know.  We would be open in the future to negotiate

21    some kind of expedited merits briefing.

22            I would note that six months is, you know, a

23    fairly standard amount of lead time before regulatory

24    guidance goes into effect and should be more than enough

25    time for us to litigate the merits on an expedited basis if

1    the merits are something that will be litigated on the

2    guidance.

3           And as your Honor noted, Plaintiffs would not be

4    starting from scratch on their brief if the guidance did not

5    change significantly enough for them to withdraw their

6    claims.

7           THE COURT:  I think what I'd like to do is have

8    the two of you chat offline and see if you can't come up

9    with some sort of schedule or justiciable road forward that

10   you can all agree on.

11          I feel like you're in a better position to

12   understand the needs of your clients and also how this is

13   likely to unfold.

14          If you can't come up with an agreement, you know,

15   I'm certainly willing to proceed on this complaint as things

16   stand.

17          You know, Mr. Martinez, I certainly -- I'm not

18   surprised that the government is suggesting there are

19   grounds to dismiss your complaint at this point.  Obviously,

20   I'm not in a position to weigh in on that one way or the

21   other now.

22          But I guess I'll tell you, A, I'm inclined to

23   defer to the Plaintiff on the appropriate timing, but -- to

24   the extent that there's a dispute between the two of you.

25   But, B, I'm not going to be thrilled to go through this

1    twice.

2           So, Mr. Martinez, pick your poison carefully.

3    I'll do one round of expedited briefing; but if that results

4    in an agreement with Ms. Coogle that this is moot right now,

5    I'm going to be a lot less anxious to respond to your calls

6    of wolf a few months down the road when the second letter

7    comes out.

8           MR. MARTINEZ:  I think that's fair enough, your

9    Honor.

10          Could I just -- I'm very happy to continue talking

11   to Ms. Coogle about the options.  Just to be clear, we have

12   been trying, I think, on both sides to exchange views and

13   have not been able to come to an agreement so far.  But we

14   can give it another go for sure.

15          Can I just say one thing, just so we're on the

16   same page with respect to the time to comply?  And this is

17   with all respect to the government.  But frankly, the

18   government does not understand what a compliance burden that

19   its "Dear Colleague" letter is imposing.

20          When the government announced the first version of

21   its "Dear Colleague" letter, it was literally effective

22   immediately and required compliance in just a handful of

23   months.  The government apparently did not realize.  They

24   thought it would be possible for every entity out there to

25   renegotiate and change, you know, thousands and thousands of

1    contracts per entity on a very short timeline.

2           They then backtracked and set the deadline for

3    September 1st, at which point they got 1100 comments, most

4    of them negative, many of them raising the point with

5    compliance deadlines.  And then they backtracked again, now

6    saying that we recognize everybody needs additional time to

7    comply, so they suspended the timeline.

8           So when Ms. Coogle says six months is plenty of

9    time for us to comply, with great respect, that just does

10   not reflect the reality of the situation at all.  And I

11   think even if six months were time to comply, it certainly

12   wouldn't be time to resolve, you know, a serious APA

13   challenge to their, you know, regulatory action before we

14   start complying.  But we couldn't do that.

15          So we're very happy to continue talking with the

16   government and try to work out something that makes sense

17   that's maybe something in the middle.  And we certainly

18   don't want our -- our goal here is to avoid having you

19   decide multiple rounds of briefing on this, and hopefully we

20   can reach agreement.  But I wanted to clarify that, because

21   the burdens here are very substantial.  We've got 180

22   contracts that are going to need to be renegotiated because

23   of the terms of the DCL, and that's a very time-consuming

24   process for us and for the institutions that we partner

25   with.

1          THE COURT:  I appreciate that, Mr. Martinez.  And

2     what you're saying makes sense to me.

3          But I'm just -- I guess we may have to determine

4     where the law's standing and ripeness cuts on that.  But

5     I'll ask you to factor that into your proposal in terms of

6     whether it makes sense to move forward on a letter that is

7     extended or not.

8          MR. MARTINEZ:  Yes.  Absolutely.

9          I think the other thing I'll just put out there,

10    either just to get -- it might be helpful to the parties to

11    get your reaction to this, but certainly I'll talk to the

12    government about it -- I think from our perspective, our

13    real -- our only goal here is to be able to get a final

14    decision from you before we have to actually start

15    complying.

16          And so if the government were willing to agree

17    that whenever their provision comes out they would be

18    willing to stay the effective date until we get a final

19    resolution from you, that would solve all our problems.  We

20    wouldn't have to file a PI motion.  We could do it on an

21    expedited basis or on a non-expedited basis at that point.

22    We'd be totally willing to work with the government and with

23    you on that.

24          Our only -- our burden is to avoid a situation in

25    which we have to undergo very burdensome compliance efforts

 1   before we know what the law is.  And I think that's all

 2   we're trying to do.  We would welcome, you know, the

 3   government.  If the government would agree to that, we think

 4   that would be a solution to the whole problem.

 5           THE COURT:  That sounds like it could be a good

 6   way to move forward, at least stay compliance or perhaps

 7   build in extra time for your clients at the very least in

 8   light of the litigation.

 9           But I think those are good conversations for you

10   all to have between yourselves.  I can move quickly, as I

11   said.  I know that Latham & Watkins can move quickly and I

12   can require the government to move quickly.  So I think

13   there are different ways we can do it, but I'd like to be at

14   the very least efficient and not replicate briefing and

15   rulings if different iterations of the letter come out.

16           So, Mr. Martinez, how long do you think you need

17   to talk with the government and come back with a proposed

18   scheduling order?

19           MR. MARTINEZ:  Your Honor, we're happy to talk to

20   the government immediately following this call and, you

21   know, we're eager to exchange ideas with them.  I do suspect

22   that it's possible we're not going to agree.  So if that's

23   the case, as soon as that becomes apparent, maybe early next

24   week, we could let you know.  But we're happy to talk

25   immediately.

1            THE COURT:  I imagine, Ms. Coogle, especially

2      because we're trying to explore something like the agreement

3      that Mr. Martinez was suggesting, staying effectiveness

4      pending my decision, that it's going to be a decision you're

5      going to need to bat around with people at the department.

6      So I'm looking for a date for a joint status report.

7      Ms. Coogle, what do you think is realistic?

8            MS. COOGLE:  Thank you, your Honor.

9            I think perhaps seven days, you know, would be

10     plenty of time.  As you know, I would have to consult with

11     the department about, you know, any agreement we might reach

12     regarding this, given the many equities involved.  But I

13     think given the lack of urgency here, I think, you know, a

14     week would be appropriate.

15           THE COURT:  Great.  I agree.

16           So I'm going to continue to stay any briefing

17     requirements on the current motions.  I'll direct the

18     parties to file a joint status report that will ideally

19     propose a way forward that the parties agree on.  To the

20     extent you can, you can lay out in your proposal how we can

21     proceed.

22           Mr. Martinez, anything further for Plaintiff?

23           MR. MARTINEZ:  No, your Honor.  Thank you.

24           THE COURT:  And Ms. Coogle?

25           MS. COOGLE:  No, your Honor.  Thank you very much.

1          THE COURT:   Thanks, folks.   Have a good weekend.

2          MR. MARTINEZ:   Thank you, your Honor.

3          (Proceedings concluded.)

1                    **<u>CERTIFICATE</u>**

2

3              I, LISA EDWARDS, RDR, CRR, do hereby

4    certify that the foregoing constitutes a true and accurate

5    transcript of my stenographic notes, and is a full, true,

6    and complete transcript of the proceedings produced to the

7    best of my ability.

8

9

10             Dated this 11th day of January, 2024.

11

12             <u>/s/ Lisa Edwards, RDR, CRR</u>
               Official Court Reporter
13             United States District Court for the
                 District of Columbia
14             333 Constitution Avenue, Northwest
               Washington, D.C. 20001
15             (202) 354-3269

16

17

18

19

20

21

22

23

24

25